Chaka Okadigbo (CA 224547)
cokadigbo@hkm.com
HKM Employment Attorneys LLP
700 South Flower Street, Suite 1067
Los Angeles, CA 90017
Phone: (213) 431-6209

Vicki K. Horne, Esq. (PA 36578)
vkhorne@hornedaller.com
HORNE DALLER LLC
1380 Old Freeport Road, Suite 3A
Pittsburgh, PA 15238
Phone: (412) 967-9400
*PRO HAC VICE APPLICATION PENDING*

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

| | |
|---|---|
| Shanan Guinn,<br><br>            Plaintiff,<br><br>   v.<br><br>The Walt Disney Company,<br><br>            Defendant. | No.<br><br>**Complaint For:**<br><br>**(1) Breach of Implied Covenant of Good Faith & Fair Dealing**<br>**(2) Violation of Cal. Labor Code § 970**<br>**(3) Promissory Fraud**<br>**(4) Negligent Misrepresentation**<br>**(5) Promissory Estoppel** |

1

## **INTRODUCTION**

1. This action arises from an employment agreement between Plaintiff, Shanan Guinn, and Defendant, The Walt Disney Company ("hereinafter "Disney"), wherein Disney made a formal offer of employment to Ms. Guinn, which Ms. Guinn accepted. After Ms. Guinn gave notice of resignation to her then-employer, BP, initiated return to the United States and, at the insistence of Disney, took other action to her financial and professional detriment and necessary to undertaking the contract, Disney rescinded the offer.

2. At all times during the formation and negotiation of the employment agreement, Disney knew that in order to commence employment, Ms. Guinn would be required to resign from her employment with BP, terminate her expatriate ("expat") status and move back to the United States, as she had been transferred to London pursuant to her employment agreement with BP. Disney made that offer when it was at the same time facing substantial public and political resistance over Disney's response to a controversial Florida law.

3. At no time prior to rescinding the offer did Disney indicate to Ms. Guinn that the position was at risk of being eliminated. Rather, Disney represented that, by accepting the offer, Ms. Guinn would be "begin[ning] the next chapter of [her] career" with "a Company known worldwide for wonder and imagination!"

4. As a direct result of Disney's misrepresentations and bad faith conduct, Ms. Guinn lost her job with BP, and moved back to the United States where she remains unemployed, and her professional trajectory undermined. Ms. Guinn has suffered and will continue to suffer significant compensatory damages, including lost compensation and lost benefits in an amount far exceeding the jurisdictional limits of the Court.

## THE PARTIES

5. Plaintiff SHANAN GUINN is an adult individual and citizen of Washington, District of Columbia, with a principal residence in at 1107 C Street NE, Washington, D.C. 20002.

6. Defendant THE WALT DISNEY COMPANY ("hereinafter "Disney") is a corporation registered in Delaware and a citizen of California, and is headquartered at 500 South Buena Vista Street, Burbank, California 91521-4016.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because this action involves citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interest and costs.

8. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b)(1) because Disney is a citizen of the State of California and its principal place of business is located in this judicial district.

## FACTUAL BACKGROUND

9. Ms. Guinn's professional experience includes ten (10) years with BP p.l.c., and a diverse background in public service, including positions in the White House, United States Department of Defense, and United States Congress.

10. Ms. Guinn maintained employment with BP from 2011 to 2022, and held the following positions:

    (a)     Senior Vice President, Business Communications & Internal Campaigns from 2019 to 2022;

3

(b)   Vice President of Communications & External Affairs for BP North Africa from 2018 to 2019;

(c)   Head of Strategy & Planning for Communications & External Affairs from 2011 to 2014; and

(d)   Director of U.S. Communications from 2011 to 2013.

11.   In 2018, as a condition of her promotion to Vice President of Communications & External Affairs for BP North Africa, Ms. Guinn was relocated to London, United Kingdom, where she remained on expat status until June 2022.

12.   Ms. Guinn's expat status was pursuant to her contract with BP only, and she otherwise remained a citizen of and domiciled in Washington, D.C., which is where she owns real property and maintains her primary residence.

*Restructuring and New Leadership in Disney*

13.   In 2020, Disney experienced a significant change in leadership as Robert Chapek, assumed the role of Chief Executive Officer (CEO) of the Walt Disney Company in February 2020.

14.   In December 2021, Disney hired Geoffrey Morrell for the newly created position of Chief Corporate Affairs Officer (CCAO).[1]

15.   Mr. Morrell reported directly to Disney CEO Chapek.

16.   Mr. Morrell had oversight of various department teams, including Disney's Corporate Communications, Global Public Policy, Government Relations, Corporate Social Responsibility, and Environmental, Social and Governance teams.

---

[1] The Walt Disney Company, *The Walt Disney Company Names Geoff Morrell As Chief Corporate Affairs Officer* (Dec. 7, 2021), https://thewaltdisneycompany.com/the-walt-disney-company-names-geoff-morrell-as-chief-corporate-affairs-officer-2/.

4

17. Disney announced on April 5, 2022, the hire of Kristina Schake as the Executive Vice President of Global Communications—a position in which she would report directly to Mr. Morrell.

***Disney Recruits Ms. Guinn***

18. In March 2022, Disney also began recruiting Ms. Guinn for the position of Head of Corporate Affairs Operations, in which role she would report to Mr. Morrell, her former supervisor while at BP.

19. Though at all times Ms. Guinn was a U.S. citizen, she was living in London and working for BP throughout the negotiations with Disney.

20. By letter dated March 28, 2022, (hereinafter "Offer Letter") and e-mail dated March 29, 2022, Disney made a clear and unambiguous offer of employment to Ms. Guinn for the position of Head of Corporate Affairs Operations. A true and correct copy of the Offer Letter and the March 29, 2022 e-mail communication are attached hereto and marked as Exhibit 1.

21. On April 1, 2022, Ms. Guinn expressly accepted, via e-mail, Disney's offer of employment.

22. At the behest of Disney, at the time she accepted employment, Ms. Guinn further agreed that on April 4, 2022, she would give BP notice of her resignation. A true and correct copy of the April 1, 2022 e-mail communications are attached hereto and marked as Exhibit 2.

23. Disney responded to Ms. Guinn's April 1, 2022 e-mail with: "That is great to hear! Welcome to the Disney Family [smiley face]." (Ex. 2).

24. In discussing Ms. Guinn's start date with Disney, Disney was insistent that she begin employment immediately, however, her employment contract with BP imposed a six-month notice obligation prior to resignation.

5

25. Upon Disney's insistence, Ms. Guinn worked to renegotiate the terms of her employment with BP and was able to reduce the notice period to only two (2) months; this meant that she would remain working for BP until June 3, 2022, after which time she would relocate back to the United States and move to Los Angeles in order to begin her new position with Disney on June 6, 2022.

26. At no time did Disney indicate to Ms. Guinn that her employment was contingent upon other persons being or remaining employed at Disney.

27. The reduced notice period caused Ms. Guinn to lose a bonus and additional year of vesting in BP stock options, all of which was disclosed to Disney.

### *Disney Faces Public Backlash for Response to Florida Law*

28. In March 2022, both prior to and during the negotiations between Ms. Guinn and Disney, the Florida legislature passed House Bill (HB) 1557, Parental Rights in Education, which came to be known as the "Don't Say Gay" law and has been criticized for being openly discriminatory and controversial with respect to the LGBTQ+ community.

29. HB 1557 bans discussion or teaching about the LGBTQ+ community, and sexual orientation or gender identity in schools.

30. Disney faced substantial backlash for its initial silence in response to HB 1557, which was primarily directed at CEO Chapek.

31. On March 11, 2022, Mr. Chapek issued a written apology to Disney employees for his lack of action in response to HB 1557. [2]

---

[2] Deadline, *Bob Chapek's Toughest Test Yet: Disney's "Worst Week" Over 'Don't' Say Gay' Response Could Lead To "Profound Change"* (Mar. 11, 2022), https://deadline.com/2022/03/disney-dont-say-gay-controversy-backlash-employees-bob-chapek-1234976469/.

32. Despite Mr. Chapek's attempt to correct Disney's response to HB 1557, Disney continued to face substantial criticism, especially from its own employees, including an organized walkout on March 15, 2022.[3]

33. Florida Governor, Ron DeSantis, signed HB 1557 into law on March 28, 2022, which Disney criticized, saying the bill should never have been signed into law; this was the same date as Disney's Offer Letter to Ms. Guinn.

34. Florida politicians immediately began discussions to retaliate against Disney for its criticism of HB 1557.

35. On March 31, 2022, a Florida Representative proposed the possibility that Florida would repeal a law that gave Disney a tax advantage based on the district in which Disney's Walt Disney World is located; the Florida legislature ultimately did repeal the law on April 22, 2022.

36. Disney thereafter made personnel changes, including the resignation of Mr. Morrell, which was announced on April 29, 2022.[4]

37. Disney eliminated Mr. Morrell's position and immediately promoted Kristina Schake to Senior Executive Vice President of Communications and Corporate Affairs to assume Mr. Morrell's duties and responsibilities, on or about April 29, 2022.

38. On May 2, 2022, after learning of Mr. Morrell's departure, Ms. Guinn communicated with Disney's Human Resources Department at which time she was given no information that Mr. Morrell's departure could have any effect on her employment with Disney.

---

[3] Deadline, *Disney Dissent Looks To Grow Over 'Don't Say Gay' As LGBTQ+ Staff Plan Walkouts Starting Today* (Mar. 15, 2022), https://deadline.com/2022/03/disney-dont-say-gay-walk-out-lgbtq-staff-bob-chapek-florida-1234979311/.

[4] Deadline, *Geoff Morrell Out As Disney Communications Chief After Florida Fiascos; Kristina Schake & Horacio Gutierrez To Split Role* (Apr. 29, 2022), https://deadline.com/2022/04/disney-geoff-morrell-exits-bob-chapek-communications-kristina-schake-horacio-gutierrez-1235013269/.

7

39. Rather, Human Resources asked various questions relating to Ms. Guinn's resignation with BP and plan to relocate back to the United States.

40. At no time during employment negotiations nor at the time Ms. Guinn was offered and then accepted employment did Disney ever indicate that her employment was contingent upon or in any way at risk as a result of the dispute between Disney and the state of Florida.

41. At no time during employment negotiations nor at the time Ms. Guinn was offered and then accepted employment did Disney ever indicate that her employment was contingent upon or in any way at risk as a result of other personnel decisions at Disney.

42. On and after May 2, 2022, BP set into motion Ms. Guinn's return to the United States, a necessary condition to the termination of her employment and provided no opportunity to stop or halt that process.

43. On May 17, 2022, Disney rescinded the employment agreement with Ms. Guinn and communicated that the position for which she was hired no longer existed.

44. Having already given notice of resignation to BP and in the active process of returning to the United States, Ms. Guinn reiterated her interest in and commitment to employment with Disney.

45. Ms. Guinn offered to postpone her start date in order to allow Disney time to determine a different role for Ms. Guinn but Disney rejected that offer.

46. Ms. Guinn offered to travel to California to meet personally with Disney personnel, but Disney rejected that offer.

47. Disney made no substantive efforts to find alternative placement for Ms. Guinn.

48. Upon Disney's rescission of the offer of employment, Ms. Guinn sought to retain her employment with BP, but was only permitted to extend employment through June 30, 2022.

49. Though Ms. Guinn continued working remotely for BP through the end of June 2022, following what was negotiated to be her last day of employment with BP on June 3, 2022, consistent with obligations attached to her expat status, Ms. Guinn was relocated back to the United States where she remains presently and without employment.

***Compensation and Benefits Promised to Ms. Guinn***

50. Disney's offer of employment included, *inter alia*, a substantial total compensation package that included, in addition to base salary and insurance benefits, signing bonuses, relocation benefits, participation in annual bonus and long-term incentive plans, the Disney benefits and rewards program and the like, the specifics of which will be established at time of trial.

51. The terms of Ms. Guinn's employment reflect the lengthy discussions and negotiations between Disney and Ms. Guinn, during which Disney understood that Ms. Guinn would be required to make significant personal and financial sacrifices in order to join Disney.

52. Further, by requiring Ms. Guinn to terminate her employment prior to the agreed notice period, Disney further understood that she would lose an earned bonus and annual stock vesting.

53. Disney treated Ms. Guinn as a new hire from the date of the offer of employment, which was evidenced even after the offer was rescinded, including various e-mails from Disney directed at new hires and having Ms. Guinn work with Disney's executive placement firm to explore post-termination employment opportunities.

54. At all times material hereto, Disney also knew that, had Ms. Guinn remained employed with BP, she would have been retirement eligible on March 31, 2025, as a result of which she would have realized substantial further economic benefits and which opportunity was lost with the acceptance of employment with Disney.

55. Ms. Guinn has and will continue to suffer significant compensatory damages, including but not limited to losses due to salary, bonuses, stock options, 401K match, pension, benefits tied to her expat status, and a medical lump sum payable upon retirement, the specifics of which will be introduced at time of trial.

56. Ms. Guinn has also suffered and will continue to suffer from harm to her reputation and professional career, emotional distress, and mental anguish as a result of Disney's conduct.

## COUNT I

## BREACH OF IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

57. The above paragraphs are incorporated as though each paragraph were set forth fully herein.

58. Inherent in the employment agreement between Ms. Guinn and Disney is the implied covenant of good faith and fair dealing, which is an implied promise that each party would refrain from doing anything to injure the right of the other to receive the benefits of the agreement.

59. Under the implied covenant of good faith and fair dealing, where 'a contract confers on one party a discretionary power affecting the rights of the other, a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing.' *Sheppard v. Morgan Keegan & Co.*, 218 Cal. App. 3d 61, 67 (Cal. Ct. App. 1990).

60. By letter dated March 28, 2022, and e-mail dated March 29, 2022, Disney made a clear and unambiguous offer of employment to Ms. Guinn for the position of Head of Corporate Affairs Operations. (Ex. 1).

61. Disney's offer of employment included, *inter alia*, a substantial total compensation package that included, in addition to base salary and insurance benefits, signing bonuses, relocation

benefits, participation in annual bonus and long-term incentive plans, the Disney benefits and rewards program and the like, the specifics of which will be established at time of trial.

62. On April 1, 2022, Ms. Guinn expressly accepted, via e-mail, Disney's offer of employment. (Ex. 2).

63. Disney knew or should have known the position offered to Ms. Guinn was not certain, as Disney was, at the very time it made the offer of employment, actively addressing issues which impacted that department and its leadership, including Mr. Morrell.

64. At no time prior to soliciting and obtaining from Ms. Guinn her commitment of employment, requiring her to effectuate an early termination from BP and initiating the action to return to the United States did Disney indicate that her employment was conditional, uncertain, or otherwise at risk.

65. Ms. Guinn relied upon Disney's representations as to the mutual agreement of employment and terms in making the decision to accept Disney's offer of employment and in resigning from BP, including negotiation of BP's required notice period from six (6) to two (2) months.

66. Disney delayed notifying Ms. Guinn of the rescission of her employment until after BP announced the termination of her employment, although Disney knew or should have known prior to that time that her employment with Disney was at risk.

67. Upon Disney's rescission of the offer of employment, Ms. Guinn sought to continue her employment with BP.

68. In that her employment termination had already been announced and the process to return her to the United States was underway, Ms. Guinn was only permitted to remain in active status with BP through June 30, 2022—the end of the month of her original agreed termination date.

11

69. In making the offer of employment to Ms. Guinn, despite knowing the position might not be available and that Ms. Guinn would resign from her employment with BP as a result of her acceptance of the offer of employment, Disney breached the implied covenant of good faith and fair dealing.

70. Otherwise by its conduct, as set forth hereinabove, Disney breached the implied covenant of good faith and fair dealing.

71. Further, Disney failed to timely notify Ms. Guinn of the rescission of the offer in a manner that may have enabled her to mitigate losses.

72. As a direct result of Disney's breach, Ms. Guinn has suffered and will continue to suffer significant compensatory damages, including loss of income and employment benefits, as well as physical harm, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and harm to reputation and career opportunities.

WHEREFORE, for the foregoing reasons, Plaintiff Shanan Guinn, requests that the Court grant the relief prayed for hereinafter.

## COUNT II

### VIOLATION OF CAL. LABOR CODE § 970

73. The above paragraphs are incorporated as though each paragraph were set forth fully herein.

74. Section 970 of the California Labor Code prohibits employers from influencing or persuading an employee to relocate from one place to another for work, by means of knowingly false misrepresentations regarding the kind, character, or existence of such work. Cal. Labor Code § 970(a).

75. In making the offer of employment to Ms. Guinn, Disney knowingly misrepresented the existence of work with the intention of influencing her to resign from BP and relocate from London to California, in violation of Section 970 of the California Labor Code. Cal. Labor Code § 970(a).

76. Ms. Guinn reasonably relied upon Disney's representations, and as a result of the same, terminated her employment with BP at significant financial and opportunity loss, and relocated back to the United States.

77. Disney knew or should have known the position offered to Ms. Guinn was at risk or might no longer exist at the time it was offered to her, as Disney planned to and did eliminate Mr. Morrell's position and possibly other roles in response to the fallout over Disney's response to HB 1557 which was occurring contemporaneously with the employment negotiations.

78. Disney gave no indications that Ms. Guinn's employment was tied to or otherwise contingent upon Mr. Morrell's or anyone else's ongoing employment or any changes in the structure of the department.

79. Ms. Guinn relied upon Disney's representations as to the offer of and terms of her employment in making the decision to accept Disney's offer of employment and in resigning from BP, including negotiation of BP's required notice period from six (6) to two (2) months.

80. Further, Disney failed to timely notify Ms. Guinn of the rescission of the offer in a manner that may have enabled her to mitigate losses.

81. As a direct result of Disney's conduct, Ms. Guinn has suffered and will continue to suffer significant compensatory damages, including loss of income and employment benefits, as well as physical harm, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and harm to her reputation, professional standing, and career.

82. Ms. Guinn's reliance on Disney's representations was a substantial factor in causing her harm.

WHEREFORE, for the foregoing reasons, Plaintiff Shanan Guinn, requests that the Court grant the relief prayed for hereinafter.

## COUNT III

## PROMISSORY FRAUD

83. The above paragraphs are incorporated as though each paragraph were set forth fully herein.

84. Promissory fraud is "[a] promise, made without any intention of performing it." Cal. Civ. Code § 1710(4).

85. The promises and assurances made by Disney to Ms. Guinn regarding the future of her employment with Disney, were false statements of Disney's intent to hire Ms. Guinn as the Head of Corporate Affairs Operations.

86. Disney intentionally and/or recklessly made the promises and assurances with respect to Ms. Guinn's prospective employment without the intention of keeping them.

87. Disney gave no indications that Ms. Guinn's employment was tied to or otherwise contingent upon Mr. Morrell's employment.

88. Disney intended to induce Ms. Guinn to rely upon its promises.

89. Ms. Guinn was unaware of the falsity of Disney's promises and was justified in acting in reliance upon the promises.

90. As a direct result of Disney's conduct, Ms. Guinn has suffered and will continue to suffer significant compensatory damages, including loss of income and employment benefits, as

well as physical harm, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and harm to her reputation, professional standing, and career.

WHEREFORE, for the foregoing reasons, Plaintiff Shanan Guinn, requests that the Court grant the relief prayed for hereinafter.

## COUNT IV

## NEGLIGENT MISREPRESENTATION

91. The above paragraphs are incorporated as though each paragraph were set forth fully herein.

92. The tort of negligent misrepresentation includes "the assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true." Cal. Civ. Code § 1710(2).

93. A company is liable for negligent misrepresentation when it makes an offer of employment to fill the position, despite knowing the position will not be available. Civ. Code § 1572(4).

94. Disney negligently misrepresented that the position of Head of Corporate Affairs Operations was available for hire when it made the offer of employment to Ms. Guinn despite knowing that the position might thereafter no longer exist.

95. Even assuming Disney was unaware that its statements concerning the existence and conditions of Ms. Guinn's employment were false when made, it had a duty to promptly disclose such information and/or new conditions to Ms. Guinn upon learning of the same, which Disney failed to do.

96. Disney made untrue assertions about the availability and existence of the Head of Corporate Affairs Operations position with the intention of inducing Ms. Guinn to enter into the

15

employment contract and failed to timely notify Ms. Guinn of the same, in a manner that may have enabled her to mitigate losses.

97. The availability and existence of the Head of Corporate Affairs Operations position was a material fact which was intended to induce Ms. Guinn to accept the offer of employment and resign from BP.

98. Disney gave no indications that Ms. Guinn's employment was tied to or otherwise contingent upon Mr. Morrell's employment.

99. As a direct result of Disney's conduct, Ms. Guinn has suffered and will continue to suffer compensatory damages, including loss of income and employment benefits.

WHEREFORE, for the foregoing reasons, Plaintiff Shanan Guinn, requests that the Court grant the relief prayed for hereinafter.

## COUNT V

### PROMISSORY ESTOPPEL

100. The above paragraphs are incorporated as though each paragraph were set forth fully herein.

101. Under the doctrine of promissory estoppel, 'a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.' *Toscano v. Greene Music*, 124 Cal. App. 4th 685, 692 (Cal. Ct. App. 2004).

102. By letter dated March 28, 2022, and e-mail dated March 29, 2022, Disney made a clear and unambiguous offer of employment to Ms. Guinn for the position of Head of Corporate Affairs Operations. (Ex. 1).

16

103. Disney's offer of employment included, *inter alia*, a substantial total compensation package that included, in addition to base salary and insurance benefits, signing bonuses, relocation benefits, participation in annual bonus and long-term incentive plans, the Disney benefits and rewards program and the like, the specifics of which will be established at time of trial.

104. The terms of Ms. Guinn's employment reflect the lengthy discussions and negotiations between Disney and Ms. Guinn, during which Disney understood that Ms. Guinn would be required to make significant personal and financial sacrifices in order to join Disney.

105. On April 1, 2022, Ms. Guinn expressly accepted, via e-mail, Disney's offer of employment. (Ex. 2).

106. Also in the April 1, 2022 e-mail, Ms. Guinn reported to Disney and in response to the express request of Disney that on April 4, 2022, she would be giving her then-employer, BP, notice of her resignation and would promptly commence the process to return to the United States.

107. Ms. Guinn relied upon Disney's promise of employment when she gave her then-employer, BP, notice of her resignation and commenced the process to return to the United States.

108. Disney gave no indications that Ms. Guinn's employment was tied to or otherwise contingent upon Mr. Morrell's employment or on the status of the department.

109. At the time Disney made the offer to Ms. Guinn, it knew the position was contingent upon Mr. Morrell's employment, which was in jeopardy due to Disney's intended response to the fallout over HB 1557, yet Disney did not communicate the same to Ms. Guinn.

110. It is both reasonable and foreseeable that Ms. Guinn would resign from her employment with BP and relocate back to the United States for employment with Disney, as return to the United States and relocation was a necessary condition of employment with Disney.

111. It is both reasonable and foreseeable that Ms. Guinn would suffer substantial economic and professional harm as a result of the action of Disney.

17

WHEREFORE, for the foregoing reasons, Plaintiff, Shanan Guinn, requests that the Court grant the relief prayed for hereinafter.

## **PRAYER FOR RELIEF**

WHEREFORE, for the foregoing reasons, Plaintiff Shanan Guinn requests this Honorable Court to grant the following relief against Defendant The Walt Disney Company, including, but not limited to:

(a) Compensatory damages that are in excess of the jurisdictional limits of this Court, for the following:

(i) Past and future lost salary in an amount equal to the benefit-of-the-bargain that Ms. Guinn would have received pursuant to the offer and agreement of employment and/or equivalent to the compensation lost as a result of Disney rescinding the offer of employment, whichever is greater;

(ii) Past and future lost benefits, in an amount equal to the benefit-of-the-bargain that Ms. Guinn would have received pursuant to the offer and agreement of employment and/or equivalent to the benefits lost as a result of Disney rescinding the offer of employment, whichever is greater;

(iii) Reliance damages;

(iv) Moving expenses and costs incurred as a result of relocation from London to the United States;

(v) Loss of employment and inability to obtain comparable work;

        (vi)        Loss of income and benefits tied to her age and longevity that would have been received had employment with BP continued; and

        (vii)       The loss of the ability to recover the compensation and benefits of her employment with BP through the greater opportunity and benefits that could be realized at Disney and which was both an incentive and inducement to making the change;

(b)    General compensatory damages under Cal. Civ. Code § 3333, including but not necessarily limited to, physical harm, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and harm to reputation;

(c)    Double damages under Cal. Lab. Code § 972;

(d)    Punitive damages, as appropriate;

(e)    Costs and expenses of litigation including, as appropriate, attorney fees; and

(f)    Such further legal and equitable relief as this court deems just and proper.

**JURY TRIAL DEMANDED**

Date: October 25, 2022

Respectfully submitted,

*s/Chaka Okadigbo*
Chaka Okadigbo (CA 224547)
HKM Employment Attorneys LLP
700 South Flower Street, Suite 1067
Los Angeles, CA 90017
Phone: (213) 431-6209
cokadigbo@hkm.com

Vicki K. Horne, Esq. (Pa. 36578)
HORNE DALLER LLC
1380 Old Freeport Road, Suite 3A
Pittsburgh, PA 15238
Phone: (412) 967-9400
Fax: (412) 967-0465

vkhorne@hornedaller.com
*PRO HAC VICE APPLICATION PENDING*

*Attorneys for Plaintiff*